UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| IN RE: | ) | |
| | ) | |
| Robert Sam, | ) | Chapter 13 |
| | ) | |
| | ) | Bankruptcy No. 18-01093 |
| Debtor. | ) | |

## RESPONSE TO MOTIONS TO WITHDRAW AND DISMISS, AND STATEMENT REGARDING REPRESENTATION

COMES NOW, creditor Ralph Helm, by counsel, and states:

1.      The Debtor filed for Chapter 13 bankruptcy relief on Friday, August 10, 2018. By Monday, August 13, motions were filed by his attorney to dismiss the case and to withdraw as counsel.

2.      While Debtor was – and is – represented by counsel, at least pending the hearing scheduled for Monday, August 20, he has filed two additional documents, apparently on his own without aid of counsel: a Motion for Sanctions against attorney Tom Nack and Mr. Nack's law firm, and an untitled document at docket #11.

3.      The clerk of court subsequently filed a Notice Setting Hearing on the above matters. In the notice, attorney Thomas Nack is named as "Attorney for Landlord." The undersigned attorney was not listed in the notice.

4.      First, Mr. Helm is the landlord in this case, and is represented in this proceeding by Mr. Klesner, not by Mr. Nack, and thus Mr. Klesner

intends to appear at the telephonic hearing in place of Mr. Nack, for Mr. Helm.

5. Second, Mr. Helm notes that there is no certificate of service on file showing the Debtor's compliance with Rule 7004 with respect to the Motion for Sanctions. Mr. Nack has not availed himself of the jurisdiction of this Court, has not entered any appearance, and has not been properly served. If and when he is properly served, it is the undersigned attorney's intention to enter an appearance for Mr. Nack. The Motion for Sanctions is not ripe for consideration, and Mr. Nack should not be required to appear at the telephonic hearing on August 20.

6. The Motion to Withdraw filed by Mr. Peters appears to say that his client cannot or does not communicate with his attorney. That reading finds support in the fact the Debtor has been filing documents on his own while represented. It is also supported by the fact the Debtor has been repeatedly calling the Mr. Klesner's office, seeking to talk to him. Mr. Klesner has passed on this information to Mr. Peters, but the calls have continued.

7. With respect to the Motion to Dismiss, it is not clear whether the Debtor wishes to pursue that course of action. However, a statement made in that document, and echoed by the Debtor in his own filings, which seek to present the case as "compelling" and cast the Debtor as a victim, need to be addressed at the outset of this case.

Case 18-80103   Doc 28   Filed 08/25/18   Entered 08/25/18 13:51:23   Desc Amd
Pleadings (Record)   Page 3 of 23

8.    One fact that ought to be brought to the Court's attention is that this is not an ordinary residential lease situation, at least as to the value of the tenancy. The rent owed at the time of the bankruptcy filing was, according to the Debtor's schedules, $35,000. The rental agreement shows the monthly rent is $5,000.

9.    The property in question, which the Debtor pleads is necessary for his disabled family members, is a luxury 4-bed, 5-bath, 4,212 square foot residence outside of Galena, Illinois, at the Galena Territory/Eagle Ridge Resort. See Zillow estimate, attached as Exhibit A.

10.    The Lease Agreement, attached hereto as Exhibit B, provides at Section 17.02 that the Debtor had an option to buy for $444,000.00. The agreement was entered into in January of 2018, with the first payment due on March 1, 2018. At $5,000 per month, to become $35,000 delinquent by the date of filing means the Debtor made no payments at all to the landlord.

11.    As part of his bankruptcy filing, the Debtor filed Official Form 101A. The Debtor signed that document. The document states, in part, that "state or other nonbankruptcy law that applies to the judgment for possession," affords him "the right to stay in my residence by paying my landlord the entire delinquent amount." To date, the record in this case is devoid of any authority or argument to support that proposition, and the Movant believes that such authority does not exist.

12. The Debtor further states on Form 101A "I have given the bankruptcy court clerk a deposit for the rent that would be due during the 30 days after I file the Voluntary Petition ...." (Italics omitted.) In fact, the Debtor had not given the clerk said deposit.

13. To this day, the Debtor has not given the clerk the requisite deposit. The Debtor deposited the sum of $3,000 with the clerk of court on August 13, but the lease agreement requires $5,000 per month. Thus, the deposit fails to cover the rent that would come due in the next 30 days, as required for the 30-day stay provided by § 362(b)(22) and 362(l), to take effect.

14. In his statement to the Court, found at Docket #11, the Debtor alleges he and his attorney had made a mistake, based on a conversation with the clerk of court. The statement is not specific about the time periods relevant to this matter, e.g., the time the "mistake" was found, the time the deposit was to be paid from the lawyer's trust account, etc. The statement also does not specifically state that the funds were in the attorney's trust account or available to deposit at the time of filing. The vagueness of the statement suggests the Debtor is dissembling.

15. The Debtor's statement is further undercut by his attorney's Motion to Dismiss, which recounts that the understanding was the Debtor was to put certified funds in the mail, not that the Debtor was to pay it to his attorney's trust account.

16. Further, several things in the Debtor's filing make no sense. For example, the Plan provides that there will be an assumption of the lease, but the amounts to be paid directly by the Debtor and the arrearage to be cure are both blank. Also, the proposed payment of $150 for 36 months is wholly insufficient to cure the delinquency. Furthermore, the Debtor lists his household income at $1,500 per month, with no changes anticipated in the next year, and Schedule J shows the rent is $600 per month, rather than the $5,000 the rental agreement requires and which he states an intention to assume. There is no indication of assets at his disposal from which he could make a $3,000 deposit one business day after his filing, and he fails to list the lease as an interest in real estate on Schedule A.

17. Given the Illinois eviction order and the deficiencies of the bankruptcy filing, the Debtor is presently a squatter – a person unlawfully in possession of the landlord's real estate. It appears it was the Debtor's intention all along to be a squatter, and it is apparent from the record that he filed the bankruptcy in bad faith, made several false statements, and has failed to avail himself of the 30-day stay on eviction he sought by filing Form 101A.

18. Mr. Helm takes the following positions regarding the matters before the Court on August 20.

a. First, he does not oppose Mr. Peter's motion to withdraw.

b. Second, he asks the Court to grant the Debtor's motion to dismiss the case. Mr. Peters was the Debtor's attorney at the time of the request, had the authority to seek the dismissal, §1307(b) mandates dismissal ("the court shall dismiss") upon request, and the motion has not been withdrawn.

c. No response is necessary at this time regarding the Motion for Sanctions, for the reasons previously cited.

d. Under the unusual circumstances of this case, it is appropriate for the Court to use its powers granted it under §105 of the Code, to issue an order stating that the automatic stay has not and is not in effect as to the real estate in question.

e. The Court should hold the Debtor in contempt of court for his perjury on Form 101A, and impose reasonable sanctions, including for the damages suffered by Mr. Helm, and order said damages be paid from the deposit the Debtor paid to the clerk of court by the Debtor.

19. A clarification is in order regarding a statement concerning the legal proceedings in Illinois. In the Motion for Relief from Stay [Docket #13], it was stated that a denial of a motion to vacate was filed. In fact, an appeal is still pending, but it was the Debtor's emergency motion for a stay of eviction during the appeal that was denied on August 13. On information and belief, given the length of time appeals pend in Illinois, the denial of the

emergency stay is effectively a denial of the appeal, since eviction would

inevitably occur prior to the appeal being decided.

/s/ Steven G. Klesner
Steven G. Klesner 000013024
Johnston, Stannard, Klesner,
Burbidge & Fitzgerald, P.L.C.
373 Scott Court, Ste B
PO Box 3400
Iowa City, Iowa 52244
(319) 338-9852 Telephone
(319) 354-7265 Facsimile
ATTORNEYS FOR RALPH HELM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 20, 2018, a true copy of this document was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including the parties listed below and the Office of the United States Trustee. Parties may access this filing through the Court's system.

   /s/ Dawn M. Krabill
Dawn M. Krabill


**Service List**

Office of the United States Trustee

Carol F. Dunbar, Chapter 13 Trustee

Brian W. Peters

Parties requesting notice

**EXHIBIT**

A

No. 7113

www.legalstore.com



**...ENA Illinois** 🔍    Listing Type ▾    Any Price ▾    0+ Beds ▾    More

Public View    Owner View    Illinois · Galena · 61036 · 8 Colony Lane ·

This home has a pending offer. ❓

# 7 Colony Ln, Galena, IL 61036

**4 beds · 5 baths · 4,212 sqft**

**PENDING**

## $444,000

Zestimate®: $297,210

**EST. MORTGAGE**

Est. Mortgage: $1,787/mo

💲 Get pre-qualified

$ Get pre-qualified

**CONTACT AGENTs**

👤 Your Name

📞 Phone

✉️ Email

I am interested in the home pending sale at 7 Colony Ln GALENA IL 61036.

Contact Agent

☐ I want financing information

By pressing Contact Agent, you agree that Zillow Group and real estate professionals may call/text you about your inquiry, which may involve use of automated means and prerecorded/artificial voices. You don't need to consent as a condition of buying any property, goods or services. Message/data rates may apply. You also agree to our Terms of Use.

Gary Conlon
LISTING AGENT
☆☆☆☆☆ (0)
0 Recent sales
(815) 297-4915

Stephen Henry Clay
PREMIER AGENT
★★★★★ (9)

Beautiful site, great home on an upscale lot of 1.1 acres. Home is on central sewer & water. 3-car garage (one with a 9' door height - boat ...

Authentisign ID: 82JE74BD-7FA1-4D38-8E53-76J86CB429CC



## LEASE AGREEMENT

### Preamble

This lease agreement is made and entered into this __19__ day of ___Jan_____ 2018, at Huntley, Illinois, by and between Ralph Helm and Vera Helm, hereinafter called "Lessor", and ___KKS Trust by Robert Sam_____, hereinafter called "Lessee."

### ARTICLE 1. DEMISE, DESCRIPTION, USE, TERM, AND RENT

Section 1.01. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, that certain property, hereinafter called the "leased premises," known as 7 Colony Ct., Galena, situated in Jo Davies County, Illinois, which shall include all existing improvements to said premises to be used as a single family residence, for the term commencing, and terminating on April 1, 2019, for the initial monthly rental of $5,000.00 payable as specified in Article 2 hereof. In addition, Lessee agrees to abide by all rules and regulations of the Homeowners Association to which the premises, and all occupants, are subject.

### Delivery of Possession

Section 1.02. The premises shall be delivered to Lessee on the date of the execution hereof in its existing condition.

### ARTICLE 2. RENT

### Monthly Rent

Section 2.01. Lessee shall pay Lessor at such place as the Lessor shall designate from time to time in writing, the monthly sum of $5,000.00, payable without prior demand and without any setoff or deduction whatsoever, except as expressly provided herein. Rent payments shall be made in arrears on the 1st day of each calendar month commencing March 1, 2018 (for the rent due for February 2018) and shall continue thereafter through March 31, 2019. Lessor will credit the sum of $2,000.00 per month, commencing with the rent payment made March 1, 2018, shall be credited from the rentals paid during the term of the lease against the purchase price as set forth in the option contract made a part hereof as Exhibit 1 if the sale of the property is completed as described in the option contract. Occupancy of the premises shall be granted on February 1, 2018.

### Effect of Default in Rent and Other Payments

Section 2.02. If Lessee defaults in the payment of any installment of rent hereunder, such installment shall bear interest at the rate of eight percent (8%) per annum from the 5th day after it is due until actually paid, except real estate taxes which shall bear the interest rate charged for late payment. In like manner, all other obligations, benefits, and moneys which may become due to Lessor from Lessee under the terms hereof, or which are paid by Lessor because of Lessee's default hereunder, shall bear interest at the rate of eight percent (8%) per annum from the 5th day after due date until paid, or, in the case of sums paid by Lessor because of Lessee's default hereunder, from the date such payments are made by Lessor until the date Lessor is reimbursed by Lessee therefore.

Authentisign ID: 823E74BD-7FA1-4536-8E63-755B5CB428CC

### Intention of the Parties

Section 2.03. It is the purpose and intent of the parties hereto that this lease shall yield to Lessor the gross amount of the rental specified above.

### ARTICLE 3. TAXES AND ASSESSMENTS

### Payment by Lessor

Section 3.01. Lessor shall pay the general real estate tax bill and the Property Owners' Association fees levied on or assessed against the leased premises.

### Hold Harmless Clause

Section 3.02. Except for Lessor's negligent acts, Lessee agrees to and shall protect and hold harmless Lessor and the leased premises from liability for any and all utility bills incurred during Lessee's occupancy, together with any interest, penalties, or other sums thereby imposed, and from any sale or other proceeding to enforce payment thereof.

### ARTICLE 4. INSURANCE

### Lessee's Obligation

Section 4.01. Lessee agrees to and shall, prior to possession, secure from a good and responsible company or companies doing insurance business in the State of Illinois, and maintain during the entire term of this lease, the following coverage:

(a) Public liability insurance in the minimum amount of $1,000,000.00 per occurrence for loss from an accident resulting in bodily injury to or death of persons, and $500,000.00 for loss from an accident resulting in damage to or destruction of property. Such amounts shall be reviewed by the parties annually to determine their continuing reasonableness.

(b) Fire and extended coverage insurance on the personal property of Lessee in the premises.

### Proceeds

Section 4.02. Proceeds from any fire or casualty policy or policies in the name of Lessors, insuring the underlying premises, shall be payable to Lessor, who shall, use such proceeds to make repairs as provided below.

### Fire and Casualty Damage

Section 4.03. If the building or other improvements on the leased premises should be damaged or destroyed by fire, flood, or other casualty, Lessee shall give immediate written notice thereof to Lessor.

Authentisign ID. 873E74B0-7FA1-4538-9E53-75305CB429CC

## Total Destruction

(a) If the building on the leased premises should be totally destroyed by fire, flood, or other casualty, or if it should be so damaged that rebuilding or repairs cannot reasonably be completed within 15 working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, this lease shall terminate and rent shall be abated for the unexpired portion of this lease, effective as of the date of said written notification. Total destruction shall be determined by the Jo Davies County building department and the insurance carrier insuring the leased premises. Lessee shall be entitled to refund of $2,000.00 per month from rent paid prior to destruction set forth above.

## Partial Damage

(b) If the building or other improvements on the leased premises should be damaged by fire, flood, or other casualty, but not to such an extent that rebuilding or repairs cannot reasonably be completed within 15 working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, this lease shall terminate. If the building and other improvements are to be rebuilt or repaired and are untenantable in whole or in part following such damage, the rent payable hereunder during the period in which they are untenantable shall be adjusted equitably or in the event that Lessee cannot occupy the premises, rent shall be abated. Lessee may at its option terminate this lease by written notification at such time to Lessor, whereupon all rights and obligations hereunder shall cease. Lessor agrees to consult with Lessee as to proposed contractors to be used for repair but final decision shall be Lessor's.

(c) See also Lessee's option to Purchase set out in paragraph 17 hereof.

## Subrogation

4.04 The parties hereby waive each from the other any and all right of recovery for any loss to the premises or contents thereof that is within the scope of any fire and extended coverage policy carried by each party. The parties shall look solely to their respective insurance carrier for reimbursement of covered losses.

ARTICLE 5.   UTILITIES

## Lessee's Obligation

Section 5.01.   Lessee shall from and after taking possession of the premises and during the full term hereof pay all charges for telephone, internet, gas, electricity, sewage, and water used in or on the leased premises and for the removal of rubbish there from immediately on becoming due and shall hold Lessor harmless from any liability therefore. Lessee further agrees to pay all charges for repairs to water meters on the leased premises whether necessitated by ordinary wear and tear, temperature extremes, accident, or any other causes. Such payments shall be made immediately on becoming due.

AuthentiSign ID: 823E748D-7FA1-4636-9E53-763B5CB429CC

ARTICLE 6. WASTE AND NUISANCE

Section 6.01. Lessee shall not commit, or suffer to be committed, any waste on the leased premises, nor shall she maintain, commit, or permit the maintenance or commission of any nuisance on the leased premises or use the leased premises for any unlawful purpose.

ARTICLE 7. REPAIRS

Lessee's Duty to Repair and Maintain

Section 7.01. Lessee agrees to keep the leased premises in good order and repair and make any improvements to conform the building itself to appropriate regulation as regards Lessee's use as defined in the purpose clause hereof consistent with the building code requirements of the Jo Davies County and the Galena Territories and requirements of any other governmental body having jurisdiction over the premises. Lessee further agrees to keep the leased premises clean, and to repair or replace all broken or damaged doors, windows, plumbing fixtures and pipes, floors, stairways, railings, or other portions of the leased premises, including damage caused by moisture from broken windows and plumbing fixtures which Lessee is required to repair. Lessee shall keep the paved portion of the premises and appurtenances free of ice and snow and trash. Lessee shall permit Lessor to inspect the premises at anytime upon not less than eight hours prior notice.

ARTICLE 8. ALTERATIONS, IMPROVEMENTS, AND FIXTURES

Section 8.01. Except as otherwise provided above, Lessee shall not alter or improve the leased premises without the prior written consent of Lessor to do so. Lessee shall submit all plans and designs for remodeling to Lessor for its approval, and in the event that the plans and designs are disapproved by Lessor, such changes shall not be made until reasonable changes to the plans required by Lessor are made.

ARTICLE 9. QUIET POSSESSION

Covenant of Quiet Possession

Section 9.01. Lessor shall, on the commencement date of the term of this lease as hereinabove set forth, place Lessee in quiet possession of the leased premises and shall secure him in the quiet possession thereof against all persons claiming the same during the entire lease term and each extension thereof.

Covenant Regarding Encumbrances

Section 9.02. (a) Lessor covenants that the leased premises are not subject to any lien, claim, or encumbrance, except as hereinafter set forth, and that it is not in default or arrears in the making of any payment or the performance of any obligation relating to the leased premises.
(b) The leased premises are subject to the following:
(1) Unpaid taxes for the calendar year 2017.
(2) All conditions of record as reflected in attached Chicago Title Insurance Policy and as such policy will be updated to date of closing.

Page 4 of 10

Case 18-01093  Doc 23  Filed 08/25/18  Entered 08/25/18 09:13:08  Desc Main Pleadings (Record)  Page 14 of 19

Authentisign ID: 82JE748D-7FA1-4530-0E53-7530SC8429CC

Subordination

Section 9.03. This lease and any extensions of the term hereof shall be subordinate, at the option of Lessor, to any and all mortgages or assignments given by Lessor on the leased premises and to all refinancing liens upon the property.

ARTICLE 10.  SECURITY DEPOSIT

Receipt of Deposit

Section 10.01.  Lessor shall not require a security deposit from Lessee.

ARTICLE 11.  TERMINATION OR EXTENSION

Effect of Holding Over

Section 11.01.  In the event Lessee unlawfully holds over beyond the expiration of the term hereof, such holding over shall be deemed a month-to-month tenancy only, at the rental of 1.5 times the most recent monthly rent, payable on the 1st day of each month thereafter until the tenancy is terminated in a manner provided by law.

ARTICLE 12.  SURRENDER OF PREMISES

Removal of Property

Section 12.01.  Lessee shall, without demand therefore and at his own cost and expense upon the expiration or earlier termination of the term hereof or of any extended term hereof remove all property belonging to him and all alterations, additions, or improvements, and fixtures which by the terms hereof she is permitted to remove; repair all damage to the leased premises caused by such removal; and restore the leased premises to the condition they were in prior to the installation of the property so removed.  Any property not so removed shall be deemed to have been abandoned by Lessee and may be retained or disposed of by Lessor.

Surrender

Section 12.02.  Lessee agrees to and shall, on expiration or earlier termination of the term hereof, promptly surrender and deliver the leased premises to Lessor without demand therefore in good condition.

ARTICLE 13.  CONDEMNATION

All of Premises

Section 13.01.  If during the term of this lease or any extension or renewal thereof, all of the leased premises should to taken for any public or quasi-public use under any law, ordinance, or regulation or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this lease shall terminate and the rent shall be abated during the unexpired portion of this lease, effective as of the date of the taking of said premises by the condemning authority. In addition Lessee shall be entitled

AuthentiSign ID: B2JE74BD-7FA1-4538-9E53-753B5CB429CC

to a refund from Lessor of $2,000.00 per month for rental payments made prior to termination of lease, except the credit for February 2018 shall be as set forth above.

## Partial Condemnation

Section 13.02. If less than all of the leased premises shall be taken for any public or quasi-public use under any law, ordinance, or regulation, or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this lease shall terminate.

## Allocation of Awards

Section 13.03. Lessor and Lessee shall each be entitled to receive and retain such separate awards and portions of lump-sum awards as may be allocated to their respective interest in any condemnation proceedings. The termination of this lease shall not affect the rights of the respective parties to such awards. If Lessee exercises its option to purchase hereunder, Lessee shall be entitled to any award otherwise allocated to Lessor.

ARTICLE 14. DEFAULTS AND REMEDIES

## Default by Lessee

Section 14.01. If Lessee shall allow the rent to be in arrears more than 5 days or shall remain in default under any other condition of this lease for a period of 5 days after written notice from Lessor, or should any person other than Lessee secure possession of the premises, or any part thereof, by reason of any receivership, bankruptcy proceedings, or other operation of law in any manner whatsoever, Lessor may at its option, without notice to Lessee, terminate this lease (or, in the alternative, Lessor may reenter and take possession of said premises and remove all persons and property there from, without being deemed guilty of any manner of trespass, and relet the premises or any part thereof, for all or any part of the remainder of said term, to a party satisfactory to Lessor, and at such monthly rental as Lessor may with reasonable diligence be able to secure). Should Lessor be unable to relet after reasonable efforts to do so, or should such monthly rental be less than the rental Lessee was obligated to pay under this lease, or any renewal thereof, plus the expense of reletting, then Lessee shall pay the amount of such deficiency to Lessor.

## Cumulative Rights and Remedies

Section 14.02. All rights and remedies of Lessor under this lease shall be cumulative, and none shall exclude any other right or remedy at law. Such rights and remedies may be exercised and enforced concurrently and whenever and as often as occasion therefore arises.

## Default by Lessor

Section 14.03. If Lessor defaults in the performance of any term, covenant, or condition required to be performed by it under this agreement, Lessee may elect either one of the following:

AuthentiSign ID: 823E74BD-7FA1-4538-9E53-733B5CB429CC

(a) After not less than 5 days' notice to Lessor, Lessee may remedy such default by any necessary action, and in connection with such remedy may pay expenses and employ counsel; all (reasonable) sums expended or obligations incurred by Lessee in connection therewith shall be paid by Lessor to Lessee on demand, and on failure of such reimbursement, Lessee may, in addition to any other right or remedy that Lessee may have, deduct the costs and expenses thereof from rent subsequently becoming due hereunder; or

(b) Elect to terminate this agreement on giving at least 30 days' notice to Lessor of such intention, thereby terminating this agreement on the date designated in such notice, unless Lessor shall have cured such default prior to expiration of the 30-day period, and

## ARTICLE 15. INSPECTION BY LESSOR

Section 15.01. Lessee shall permit Lessor and its agents to enter into and upon the leased premises at all reasonable times upon at least 8 hours prior notice for the purpose of inspecting the same or for the purpose of maintaining or making repairs or alterations to the building.

## ARTICLE 16. ASSIGNMENT AND SUBLEASE

Assignment and Subletting by Lessee

Section 16.01. Lessee shall not assign or sublet all or any portion of the leased premises without the prior written consent of Lessor. No consent to assign shall contain a release of Lessee from the obligations incurred in this lease.

Assignment by Lessor

Section 16.02. Lessor is expressly given the right to assign any or all of its interest under the terms of this lease.

## ARTICLE 17. OPTION TO RENEW AND OPTION TO PURCHASE

Section 17.01. Option to Renew. NOT APPLICABLE.

Section 17.02. Option to Purchase. Lessee shall have the option to purchase the leased premises for a price of $444,000.00. Said option shall be exercised, at anytime hereafter, by advising Lessor in writing of its intent to exercise said option not later than 5:00 pm on January 31, 2019. Said notice shall be delivered to Lessor at the same address as is then presently receiving Rent payments. Notice shall be in the form of the delivery of an executed copy of the real estate contract attached hereto as Exhibit A. Said option may only be exercised if Lessee is not in default of the terms of this lease at both the time of exercise of the option and at the closing of the purchase.

## ARTICLE 18. MISCELLANEOUS

### Notices and Addresses

Section 18.01. All notices provided to be given under this agreement shall be given by certified mail, addressed to the proper party, at the following addresses:

Authentisign ID: 82JE74BD-7FA1-4536-9E53-753B5CB429CC

Lessor:        12584 Golf View Drive,
               Huntley, IL 60142

Lessee:        7 Colony Ct, Galena, IL 61036

or at such other place as the parties shall designate from time to time in
writing by notice consistent with the terms hereof.

## Parties Bound

Section 18.02.  This agreement shall be binding upon and inure to the
benefit of the parties hereto and their respective heirs, executors,
administrators, legal representatives, successors, and assigns when permitted
by this agreement.

## Applicable Law

Section 18.03.  This agreement shall be construed under and in accordance
with the laws of the State of Illinois.

## Legal Construction

Section 18.04.  In case any one or more of the provisions contained in
this lease shall for any reason be held to be invalid, illegal, or
unenforceable in any respect, such invalidity, illegality, or unenforceability
shall not affect any other provision thereof and this lease shall be construed
as if such invalid, illegal, or unenforceable provision had never been
contained herein.

## Sole Agreement of the Parties

Section 18.05.  This lease constitutes the sole agreement of the parties
hereto and supersedes any prior understandings or written or oral agreements
between the parties respecting the subject matter within it.

## Amendment

Section 18.06.  No amendment, modification, or alteration of the terms
hereof shall be binding unless the same shall be in writing, dated subsequent
to the date hereof, and duly executed by the parties hereto.

## Rights and Remedies Cumulative

Section 18.07.  The rights and remedies provided by this lease are
cumulative, and the use of any one right or remedy by either party shall not
preclude or waive its right to use any or all other remedies.  Said rights and
remedies are given in addition to any other rights the parties may have by law,
statute, ordinance, or otherwise.

## Waiver of Default

Section 18.08.  No waiver by the parties hereto of any default or breach
of any term, condition, or covenant of this lease shall be deemed to be a
waiver of any other breach of the same or any other term, condition, or
covenant contained herein.

Authentisign ID: 823E74DD-1FA1-4938-9E53-75085CB425CC

## Attorney's Fees

Section 18.09. In the event Lessor or Lessee breaches any of the terms of this agreement and the party not in default employs attorneys to protect or enforce its rights hereunder and a court order is entered finding such default, then the defaulting party agrees to pay the other party reasonable attorney's fees so incurred by such other party.

## Time of Essence

Section 18.10. Time is of the essence of this agreement.

## Exculpation of Lessor

Section 18.11. If Lessor shall convey title to the demised premises pursuant to a sale or exchange of property, the Lessor shall not be liable to Lessee or any immediate or remote assignee or successor of Lessee as to any act or omission from and after such conveyance.

## Recordation of Memo of Lease

Section 18.12. Lessor agrees to execute upon Lessee's request, a memorandum of this lease for the purpose of recordation with the Jo Davies County Recorder. The cost of recording shall be borne by Lessee.

IN WITNESS WHEREOF, the undersigned Lessor and Lessee hereto execute this agreement as of the day and year first above written.

LESSEE

*Robert Sam*

1/18/2018 12:50:51 PM CST

LESSORS

Ralph Helm

Vera Helm

Authentisign ID: 82JE74BD-7FA1-4538-9B53-753B5C8429CC

## Guarantee

FOR VALUE RECEIVED, the undersigned, hereby guarantees absolutely and unconditionally prompt payment when due, whether at maturity, by acceleration or otherwise, of the within Lease; and agrees to pay all costs and expenses, including attorney's fees, incurred by virtue of said lease terms and in the enforcement of this Guarantee. No renewal or extension of said lease, no release of any person, primarily or secondarily liable thereon, no delay in the enforcement of any obligation of the lease and no delay or omission in exercising any right or power under said Lease shall affect the liability of the undersigned hereunder. The undersigned expressly waives presentment, protest, demand, notice of dishonor or default, notice or acceptance of this Guarantee and notice of any kind with respect to said Lease or the performance of the obligations under said Lease. The undersigned consents and agrees to be bound by all of the terms and provisions of said Lease.

Address:

7 Colony Ct
Galena Illinois 61036

Signature:

Authentisign

*Robert Sam*

1/10/2018 12:58:53 PM CST

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 13 |
| Robert Sam, | ) | BANKRUPTCY NO.: 18-01093 |
| | ) | |
| Debtor. | ) | APPEARANCE |
| | ) | |

COMES NOW Attorney Kevin D. Ahrenholz, of the law firm of Beecher, Field, Walker,

Morris, Hoffman & Johnson, P.C., and enters his appearance on behalf of the debtor, Robert Sam.

> BEECHER, FIELD, WALKER, MORRIS,
> HOFFMAN & JOHNSON, P.C.
> Attorney for Debtor


> BY:      */s/ Kevin D. Ahrenholz*
>           Kevin D. Ahrenholz, AT0000438
>           620 Lafayette Street, Suite 300
>           P.O. Box 178
>           Waterloo, IA 50704
>           (319) 234-1766
>           (319) 234-1225 FAX
>           ahrenholz@beecherlaw.com

Case 18-01093 Doc 38 Filed 09/05/18 Entered 09/05/18 12:51:23 Desc Cont'd
Pleadings (Record) Page 21 of 23

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

**PROCEEDING MEMO AND ORDER**

IN RE: )
                                )   Chapter 13

ROBERT SAM, )
                                )   Bankruptcy No. 18-01093

     Debtor. )

Date of Hearing: August 20, 2018

APPEARANCES:

For Debtor: Brian Peters and Kevin Ahrenholz
For Parties-In-Interest: Steven Kesner for Ralph and Vena Helm
Case Trustee: Carol Dunbar

NATURE OF PROCEEDING:      \_\_\_\_In Court   _X_ Telephonic

 Motion to Dismiss _____

IT IS ORDERED THAT:

By agreement of the parties, the Motion to Dismiss if MOOT.

Dated and Entered \_\_August 20, 2018_____

_____
Thad J. Collins, Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
**PROCEEDING MEMO AND ORDER**

IN RE:                                    )
                                          )   Chapter 13
ROBERT SAM,                               )
                                          )   Bankruptcy No. 18-01093
        Debtor.                           )

Date of Hearing:   August 20, 2018

APPEARANCES:

For Debtor: Brian Peters and Kevin Ahrenholz
For Parties-In-Interest: Steven Kesner for Ralph and Vena Helm
Case Trustee: Carol Dunbar

NATURE OF PROCEEDING:          ___ In Court    _X_ Telephonic

 Motion to Withdraw as Attorney

IT IS ORDERED THAT:

By agreement of the parties, the Motion to Withdraw as Attorney filed by Brian Peters is GRANTED.

Dated and Entered  August 20, 2018

_____
Thad J. Collins, Bankruptcy Judge

Case 18-01093   Doc 38   Filed 09/05/18   Entered 09/05/18 12:51:23   Desc Contd
Pleadings (Record)   Page 23 of 23

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
**PROCEEDING MEMO AND ORDER**

IN RE:                                          )
                                                )   Chapter 13
ROBERT SAM,                                     )
                                                )   Bankruptcy No. 18-01093
          Debtor.                               )

Date of Hearing:   August 20, 2018

APPEARANCES:

For Debtor: Brian Peters and Kevin Ahrenholz
For Parties-In-Interest: Steven Kesner for Ralph and Vena Helm
Case Trustee: Carol Dunbar

NATURE OF PROCEEDING:          ___ In Court   _X_ Telephonic

  Debtor's Motion for Sanctions

IT IS ORDERED THAT:

Debtor's Motion for Sanctions is not ready to be before the Court as Debtor failed to serve all parties a
copy of the Motion for Sanctions.

Dated and Entered   August 20, 2018

_____
          Thad J. Collins, Bankruptcy Judge