UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| ROBERT SAM, | ) | CASE NO. 18-81910 |
| | ) | |
| Debtor(s) | ) | JUDGE: THOMAS M. LYNCH |

**THE GALENA TERRITORY ASSOCIATION'S RESISTANCE TO DEBTOR
ROBERT SAM'S MOTION FOR SANCTIONS**

COMES NOW, Respondent, THE GALENA TERRITORY ASSOCIATION, INC.

(hereinafter referred to as the "GTA"), by and through its attorneys, Brooks Law Firm, P.C. for

its Resistance to Debtor, Robert Sam's Motion for Sanctions pursuant to 11 U.S.C. §366, and in

support states:

## I. INTRODUCTION

1.     The Galena Territory Association, Inc. (hereinafter "GTA"), is an Illinois not-for-

profit corporation and is operated as a common interest community association.  The Galena

Territory is a 6,800 acre residential, recreational and resort community located near the city of

Galena, Illinois.  There are 4,105 owners of vacant lots and residences on The Galena Territory.

The GTA manages and preserves the 1,900 acres of common properties and recreational

amenities collectively owned by property owners within The Galena Territory.

2.     At all times relevant hereto, Defendants, Ralph and Vera Helm were the property

owners of 7 Colony Court, Galena, Illinois, 61036 (hereinafter referred to as the "Premises").

The Premises is located within the Galena Territory described in paragraph 1 above.

3.     On or about January 19, 2018, Debtor entered into a Lease Agreement

(hereinafter referred to as the "Lease") with Ralph and Vera Helm under which Debtor leased

certain property commonly known as 7 Colony Court, Galena, Illinois, Jo Davies County,

1

Illinois (hereinafter referred to as the "Premises") from the Helms.  (A copy of the Lease is attached hereto as Exhibit "1").

4.      The only parties to the Lease are Ralph Helm, Vera Helm, and KKS Trust by Robert Sam.  (*See* Exhibit 1).

5.      The Lease does not contain any language assigning the GTA the right to collect rent and/or enforce any provision of Lease on behalf of any of the contracting parties.  (*See* Exhibit 1).

6.      There is no lease agreement and/or contract between the GTA and Debtor relating to any matter whatsoever.

7.      According to the Helms, Debtor began occupying the Premises on February 1, 2018.  (*See* Helms' Amended Motion for Relief from Automatic Stay, filed on September 14, 2018, Docket No. 12, p.2, ¶ 4).

8.      Debtor failed to pay Helms any amounts under the Lease prompting Helms to initiate a forcible entry and detainer action on July 2, 2018 in Jo Davies County, Illinois.  (*See* Dkt No. 12, p. 2, ¶ 5).

9.      On July 2, 2018, Helms obtained a judgment for eviction (hereinafter referred to as "Eviction Order") ordering Debtor to move out of the Premises by August 11, 2018.  (*See* Dkt No. 12, p. 2, ¶ 6).

10.      On July 19, 2018, Debtor filed a Complaint against the Helms, Gary Conlon, Preferred Properties of Galena, Joe Mattingley, and the Galena Territory Association, Inc. in the Circuit Court of the Fifteenth Judicial Circuit, Jo Davies County, Illinois, Case No. 2018 L 18. In his Complaint, Debtor asserts various causes of action against the defendants relating to the Lease at issue in Debtor's Motion for Sanctions against the Galena Territory Association, Inc.

11.     Subsequent to the entry of the Eviction Order and the filing of his civil action in Jo Davies County, Debtor filed an Emergency Motion with the Second District Appellate Court seeking relief from the Eviction Order.  That Emergency Motion was denied by the Appellate Court on August 13, 2018.  (*See* Dkt No. 12, p. 2, ¶ 7).

12.      On August 10, 2018, Debtor initiated a Chapter 13 proceeding with the Bankruptcy Court for the Northern District of Iowa as Case No. 18-01093.

13.     Despite Debtor's lawsuit in the Circuit Court of the Fifteenth Judicial Circuit, Jo Davies County, Debtor's Chapter 13 Petitions and Schedules, filed on August 10, 2013, state that he has no claims or causes of action against any other parties.  (*See* Debtor's Petition and Schedules Schedule A/B, question 33 and 34, Dkt No. 3, Attachment #3).  Question 9 of Debtor's statement of financial affairs states that he has not been involved any litigation in the last year.  (*See Id*.).

14.     On September 4, 2018, the Bankruptcy Court for the Northern District of Iowa transferred this case to the Bankruptcy Court for the Northern District of Illinois—Western Division (Rockford).

15.     On September 14, 2018, Debtor filed his Motion for Sanctions against the GTA for Violation of the Automatic Stay (hereinafter referred to as "Motion for Sanctions").  (*See* Dkt. 18).

16.     In his Motion for Sanctions, Debtor alleges the GTA violated an automatic stay pursuant to 11 U.S.C. §362 by terminating his access to the Galena Territory refuse (garbage) facility.  (*See Id*.).  For the reasons set forth below, Debtor's allegation must fail.

3

## II. ARGUMENT

### A.  The GTA is not a creditor of Debtor.

17.     The GTA is not a creditor of Debtor because it does not have any claim against Debtor.

18.     Title 11 U.S.C. § 101(9)(A) (the "Bankruptcy Code") defines a creditor  as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor…"  11 U.S.C. § 101(9)(A).

19.     Here, the GTA does not have any claim against the debtor that arose at the time of or before the order for relief concerning Debtor.

20.     As described in paragraph 1 above, the GTA is a not-for-profit common community association which manages and preserves the 1,900 acres of common properties and recreational amenities collectively owned by property owners within The Galena Territory.

21.      Ralph and Vera Helm are the property owners of the Premises at issue in Debtor's bankruptcy matter and located within the Galena Territory described in paragraph 1 above.

22.     The Lease between Debtor and Ralph and Vera Helm is only between the contracting parties and does not assign any right of any kind to the GTA.  (*See* Exhibit 1.)

23.     At no time has there ever been a contract of any kind between the GTA and Debtor.

24.     As such, the GTA does not have a claim against the debtor of any kind.  Nor has the GTA made, or sought to enforce, any claim against Debtor.

25.     Furthermore, Debtor did not name the GTA as a creditor as part of his Petition for Bankruptcy nor did he list the GTA in his Verification of Creditors Matrix.  (*See* Dkt. No. 3, #2).

4

26.     Thus, the GTA is not a creditor because it is not an entity that has a claim against Debtor.  Because the GTA is not a creditor of Debtor, no automatic stay is imposed against the GTA.  (11 U.S.C. § 101(9)(A)).

27.     Therefore, the GTA did not violate an automatic stay in this bankruptcy proceeding.

WHEFORE, the Galena Territory, Inc., prays this Court deny Debtor's Motion for Sanctions against the Galena Territory Association, Inc., and for such other and further relief as this Court deems just.

**B.  No automatic stay exists in this matter because Debtor failed to comply with the requirements of 11 U.S.C.  §362(1) or §362(2).**

28.     Pursuant to 11 U.S.C. §362(a)(3) "Except as provided in subsection (b) of this section, a petition filed under §301… of this title… operates as a stay, applicable to all entities, of any act to obtain possession of the estate or of property from the estate or to exercise control over property of the estate."

29.     11 U.S.C. §362(b)(22) provides "The filing of a petition under §301… of this title… does not operate as a stay, subject to subsection (1), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor."

30.     11 U.S.C. §362(1) does provide that a debtor may be granted stay from a pre-petition eviction order if the debtor follows the procedures set forth in 11 U.S.C. §362(1).

**1.  Debtor failed to comply with 11 U.S.C. §362(1).**

31.     Debtor did file Official Form 101A; however, Debtor incorrectly certified that under non-bankruptcy law (Illinois), Debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered. (A copy of Debtor's Official Form 101A is attached hereto as Exhibit "2").

32.     Debtor also incorrectly certified that he had deposited with the Clerk any rent which would become due during the thirty (30) day period after the filing of the Bankruptcy Petition. (*See* Exhibit 2; *see also* 11 U.S.C. §362(1)(1)).

33.     The GTA joins the Helms in taking issue with both of Debtor's certifications in Form 101A.  (*See* Dkt. 12, ¶26).

**a)  There is no state or other non-bankruptcy law that applies to the judgment for possession.**

34.     The Bankruptcy Code does not impose an automatic stay for an evicted tenant unless state statute or non-bankruptcy law allows a post-petition cure to the eviction.

35.     Neither counsel for Helms, nor counsel for the GTA, is aware of any state or non-bankruptcy law, and Debtor has cited none, under which Debtor would have the right to cure the default under the Lease after the entry of the Eviction Order.  (*See* Dkt. 12, ¶26).

36.     Even if there did exist a right to cure under state or non-bankruptcy law, the Debtor has not cured the default.  (*See* Dkt 12, p. 3, ¶19, p. 5, ¶26).

37.     Therefore, Debtor failed to follow the procedures set forth in 11 U.S.C.

§362(1)(1) and thus failed to trigger the imposition of an automatic stay as provided by 11

U.S.C. §362(1)(1).

38.      In the alternative, Debtor's failure to follow the procedures set forth in 11 U.S.C.

§362(1)(1) means that any automatic stay has been lifted pursuant to the terms of 11 U.S.C.

§362(b)(22).

**b) Debtor failed to comply with 11 U.S.C. §362(1)(2).**

39.     11 U.S.C. §362(1)(2) provides that a stay may be extended beyond the initial

thirty (30) day period if:

a.  Debtor fully complied with the filing of the certifications and the payment of the rent
required by 11 U.S.C. §362(1)(1);

b. Debtor, within the initial thirty (30) day period, files with the Court and serves upon
the lessor a further certification under penalty of perjury that the Debtor has cured, under
non-bankruptcy law applicable in the jurisdiction, the entire monetary default that gave
rise to the judgment for possession.    11 U.S.C.A. § 362(1)(2).

40.     Here, Debtor failed to comply with §362(1)(1) or §362(1)(2).  Further, Debtor has

failed to cure the monetary default that gave rise to the judgment for possession.  (*See* Dkt. 12, p.

5).

41.     According to the Helms, as of the date of the Eviction Order, Debtor was in

arrears in base rent in the amount of $25,000.00. (*See* Dkt. 12, p. 5, ¶29). "Currently, through

September 1, 2018 and exclusive of any penalties or other charges to which Helms may be

entitled, Debtor is in default to Helms in the amount of $35,000.00 in base rent."  (*Id.*).  "To date,

Debtor has tendered $20,000.00 (assuming the $17,000.00 check tendered by Debtor is good)."

(*Id.*).

42.     Thus, Debtor has failed to comply with the requirements of 11 U.S.C. §362(1)(1) and §362(1)(2); therefore, any automatic stay, without admitting there is on, has been lifted pursuant to the terms of 11 U.S.C. §362(b)(22).

43.     Furthermore, for the reasons set forth in Section II(A), the GTA is not subject to any automatic stay pursuant to §362(1)(2).

WHEFORE, the Galena Territory, Inc., prays this Court deny Debtor's Motion for Sanctions against the Galena Territory Association, Inc., and for such other and further relief as this Court deems just.

**C. The GTA's termination of the property owner's (Ralph and Vera Helms') proximity card access to the Galena Territory refuse facility did not violate an automatic stay pursuant to 11 U.S.C. §362 because the GTA's termination of the Helms' proximity card is not an action to obtain possession of the property of the estate or of property from the estate or an exercise of control over property of the estate.**

44.     In the event this Court determines that, despite the GTA not being a creditor and despite Debtor failing to comply with the requirements of 11 U.S.C. §362(1)(1) or §362(1)(2), an automatic stay exists pursuant to 11 U.S.C. §362, then the GTA's termination of the property owner's (Ralph and Vera Helms') proximity card access to the Galena Territory refuse facility did not violate an automatic stay pursuant to 11 U.S.C. §362 because the GTA's termination of the Helms' proximity card is not an action to obtain possession of the property of the estate or of property from the estate or an exercise of control over property of the estate.

45.     Under 11 U.S.C. §362(a)(3), "…a petition filed under §301… of this title… operates as a stay, applicable to all entities, of any act to obtain possession of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3).

8

46.     For the reasons set forth below, the GTA has not engaged in any act to obtain possession of property of the estate or of property from the estate or exercise control over property of the estate.

47.     As an initial matter, and as set forth in Section II(A) above, the GTA is not a party to the Lease between Debtor and the owners of the Premises (Ralph and Vera Helm).  (*See* Exhibit 1).

48.     The Lease between Debtor and the owners does not grant Debtor a contractual right to use the owners' proximity card and/or a contractual right of access to the GTA's refuse (garbage) center.

49.     Similarly, there exists no contract between the GTA and the Helms entitling the GTA to possession of, or any manner of control over the Premises.  Recall the state court terminated Debtor's right to possession of 7 Colony Court, Galena, Illinois, effective August 11, 2018.

50.     As set forth in paragraph 1 above, the GTA is a not-for-profit common community association which manages and preserves the 1,900 acres of common properties and recreational amenities collectively owned by property owners within The Galena Territory.

51.     Pursuant to the Illinois Common Interest Community Association Act, 765 ILCS 160/1-35, and the GTA's the GTA's Rules and Regulations, it is the property owner(s) whom determine whether or not their tenants are authorized to enter and/or use GTA facilities—including the refuse (garbage) facilities.

52.     Pursuant to 765 ILCS 160/1-35 of the Illinois Common Interest Community Association Act:

> "...the declaration, bylaws, other community instruments, and rules and regulations that relate to the use of an individual unit or the common areas shall be applicable to any

person leasing a unit and shall be deemed to be incorporated in any lease executed or renewed on or after the effective date of this Act." 765 ILCS 160/1-35.

53.     Under the plain language of the Illinois Common Interest Community Association Act, the GTA's Rules and Regulations are applicable to Debtor.  (*Id.*).

54.     The GTA's Rules and Regulations, page 4, Section C, paragraph 2 states in relevant part, "[p]roperty owners shall be responsible for their…tenants…guests, and invitee's compliance with GTA Rules and Regulations." (*See* the Galena Territory Association, Inc.'s Rules and Regulations, p. 4, C, paragraph 2.  A copy of the Galena Territory Association, Inc.'s Rules and Regulations is attached hereto as Exhibit "3").

55.      Pursuant to the GTA's Rules and Regulations, a lessee's use of a proximity card must be authorized by a member/owner.  (*Id.*, Exhibit 3, page 3, A, paragraph 2).

56.     Furthermore, "[a]cess to the refuse centers is permitted by use of valid proximity card or guest pass."  (*Id.*, page 9, O, paragraph 5).

57.     In other words, pursuant to the GTA's Rules and Regulations, an owner is responsible for their tenants and may or may not provide authorization for a tenant to use a proximity card.  Thus, a tenant is only allowed access to the GTA's refuse center if they are *permitted by an owner* to use a proximity card.  In other words, as a tenant, Debtor was not entitled at any time to unfettered access to the GTA's refuse facilities.

58.     On or about July 5, 2018, the GTA was directed by the property owner, Ralph Helm, to turn off the proximity cards for 7 Colony Court.  (*See* Exhibit 4).  Pursuant to its Rules and Regulations, the GTA complied with the owner's direction and deactivated proximity card access to the refuse (garbage) facility for the Premises.

59.     On or about July 6, 2018, the owners (via Defendants Helms' attorney) re-authorized the GTA to turn on Plaintiff's proximity cards.  (*See* Exhibit 5).  Debtor was informed

that the owners authorized his use of the refuse facility until August 11, 2018 at 11:59 PM (the

date of the Eviction Order).  (*Id*.).

60.     Debtor filed this bankruptcy proceeding on August 10, 2018.

61.     Pursuant to its Rules and Regulations, the GTA complied with the owner's

direction and deactivated proximity card access to the refuse (garbage) facility for the Premises

on August 11, 2018 at 11:59 PM.

62.     Debtor did not list the GTA as a creditor in his Bankruptcy Petition; as such, the

GTA did not receive a Notice of Commencement or otherwise receive notice of Debtor's filing

of bankruptcy prior to August 11, 2018.

63.     On August 17, 2018, Debtor emailed the President of the GTA Board of Directors

and stated he filed bankruptcy on August 10, 2018.  (A copy of Debtor's August 17, 2018 email

is attached hereto as Exhibit 6).  Debtor claimed he informed counsel for the Helms his access to

the refuse (garbage) facility was terminated. (*Id*.).

64.     To date, the GTA has not received authorization from the owners of the Premises

(the Helms) to re-activate their unit's proximity card access to the GTA refuse (garbage) facility.

65.     Further, Debtor has not requested that the GTA re-activate the Helms' proximity

card access to the refuse (garbage) facility.  Instead, Debtor has merely informed the GTA of his

perceived consequences for not being provided access (i.e. storing garbage inside the Premises).

(*See* Exhibit 6).

66.     Pursuant to the GTA's Rules and Regulations set forth above, the property owners

(the Helms) are responsible for the actions of their tenant and have the authority to instruct the

GTA to terminate their proximity card access to the refuse facility.  Similarly, the GTA is

11

obligated under its Rules and Regulations to comply with the property owners' instructions relating to the use of proximity card access.

67.    Based on all of the above, the GTA was obligated under its Rules and Regulations to comply with the property owners' (the Helms') instructions to terminate their proximity card access to the refuse facility on August 11, 2018 at 11:59 PM.

68.    Therefore, The GTA's termination of the property owners' (Ralph and Vera Helms') proximity card access to the Galena Territory refuse facility, at the property owners' request, did not violate an automatic stay pursuant to 11 U.S.C. §362 because the GTA's termination of the Helms' proximity card is not an action to obtain possession of the property of the estate or of property from the estate or an exercise of control over property of the estate.

WHEFORE, the Galena Territory, Inc., prays this Court deny Debtor's Motion for Sanctions against the Galena Territory Association, Inc., and for such other and further relief as this Court deems just.

**B. IN THE ALTERNATIVE—The GTA's termination of the property owners' (Ralph and Vera Helms') proximity card access to the Galena Territory refuse facility did not violate § 366 to the Bankruptcy Code, which prohibits utilities from discontinuing services in response to a bankruptcy filing while providing reasonable assurance that utilities will be paid for post-petition service.**

69.    The GTA restates and incorporates its arguments in paragraphs 41 through 48 above.

70.    In the event this Court presumes Debtor's Motion for Sanctions is under 11 U.S.C. § 366, rather than §362, then in the alternative, the GTA properly terminated proximity card access to the Galena Territory refuse (garbage) facility because the owners of the property, and not Debtor, have the authority to instruct the GTA to terminate their proximity car access to the GTA refuse facility.   Furthermore, the GTA's termination of the owners' proximity card

12

access to the GTA refuse facility was not "in response to a bankruptcy filing" because the

owners' of the property instructed the GTA to terminate proximity card access to the GTA refuse

facility prior to Debtor's bankruptcy filing, and consistent with the state court terminating

Debtor's right to possession of the Premises.

71.     11 *U.S.C.* § 366 provides, in pertinent part:

[A] utility may not alter, refuse, or discontinue service to, or discriminate against, the
trustee or the debtor solely on the basis of the commencement of a case under this title or
that a debt owed by the debtor to such utility for service rendered before the order for
relief was not paid when due."  11 *U.S.C.* § 366(a).

72.     Refusing to provide utility service is not a *per se* violation of the Bankruptcy

Code.  *In re Sanchez*, 545 B.R. 55, 58–59 (Bankr. D.N.M. 2016) *citing In re Crome,* 2008 WL

5645100, *3 (Bankr.N.D.Ill.2008) (collecting cases and holding that the electric

company's refusal to reinstate service after debtor filed bankruptcy did not violate §§ 362(a) or

366 because of debtor's pre-petition tampering); *In re Parks,* 2008 WL 2003163, *4

(Bankr.N.D.Ohio 2008) ("no one disputes that a utility can refuse service ... for tampering or

unauthorized use" without violating the stay).

**1.  The GTA is not a utility pursuant to11 U.S.C. § 366 of the Bankruptcy Code.**

73.     As stated in paragraph 1, the Galena Territory Association, Inc. (hereinafter

"GTA"), is an Illinois not-for-profit corporation and is operated as a common interest community

association.  The GTA manages and preserves the common properties and recreational amenities

collectively owned by property owners within The Galena Territory.

74.     The GTA does not perform curbside garabage pickup in the Territory.  Owners

may make arrangements with trash collection service companies.

75.     Access to the GTA refuse (garbage) facility is permitted by use of a valid

proximity card or guest pass.  (*See* Exhibit 3, p. 9, O, paragraph 5).

76.     Pursuant to the GTA's Rules and Regulations set forth above, the property owners (the Helms) are responsible for the actions of their tenant and have the authority to instruct the GTA to terminate their proximity card access to the refuse facility.  Similarly, the GTA is obligated under its Rules and Regulations to comply with the property owners' instructions.

77.     The GTA does not charge property owners' tenants for access to the GTA refuse (garbage) facility.  Thus, the GTA does not claim any debt is owed by Debtor for the use of the GTA refuse (garbage) facility.

78.     Therefore, the GTA is not a "utility" pursuant to § 366 of the Bankruptcy Code because it is 1) neither in the business of providing trash collection services, 2) nor does it claim there is a debt owed by the Debtor for its (non-existent) services.

**2.  The GTA did not discontinue service in response to Debtor's bankruptcy filing.**

79.     In the event this Court determines the GTA is a utility under the Bankruptcy Code, the GTA did not violate an automatic stay pursuant to § 366 because it did not discontinue service in response to Debtor's bankruptcy filing.

80.     As stated above, the owners of the Premise instructed the GTA to terminate proximity card access to the GTA refuse facility on August 11, 2018. (*See* Exhibit 5).

81.     The owners' instruction to the GTA to terminate proximity card access was made prior to Debtor's filing of bankruptcy on August 10, 2018.

82.     Moreover, the GTA did not receive formal notice of Debtor's filing of bankruptcy.  (*See* Dkt. No. 3, Verification of Creditor Matrix, which does not name the GTA). The GTA was not aware Debtor filed bankruptcy until August 17, 2018. (*See* Exhibit 6).

83.     Thus, as an initial matter, it is undisputed the GTA's termination of proximity card access to the GTA refuse facility was not done "solely on the basis of the commencement of

14

a case under this title" as required by the plain language of 11 *U.S.C.* § 366(a). Instead, per its Rules and Regulations, the GTA only terminated access after it was instructed to do so by the owners' of the Premises.

84.     Further, the GTA has a right to discontinue service where there is evidence of unauthorized use. *See In re Parks,* 2008 WL 2003163, \*4 (Bankr.N.D.Ohio 2008) ("no one disputes that a utility can refuse service ... for tampering or unauthorized use" without violating the stay).

85.     As of August 11, 2018, Debtor was no longer authorized to use the owners' proximity card to access the GTA refuse facility. Thus, the GTA did not violate 11 *U.S.C.* § 366(a) by terminating proximity card access to the GTA refuse facility on August 11, 2018, at the request of the property owners.

WHEREFORE, the Galena Territory Association, Inc., prays this Court deny Debtor's Motion for Sanctions, and for such further relief as is fair and equitable in the premises.

Respectfully submitted,

/s/ Jeffrey C. McDaniel
Brooks Law Firm, P.C.
3725 Blackhawk Road, Suite 200
Rock Island, IL 61201
Telephone:     (309) 786-4900
Facsimile:      (309) 786-4940
jcm@brookslawfirmpc.com
**ATTORNEY FOR GALENA TERRITORY ASSOCIATION**

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was sent to the below-listed individuals by electronic means or by enclosing the same in an envelope in a U.S. Post Office mailbox in Rock Island, Illinois on the 26th day of September 2018.

/s/ Jeffrey C. McDaniel

**VIA U.S. MAIL**
Robert Sam
7 Colony Court
Galena, IL 61036

**VIA ELECTRONIC MEANS:**
Kevin D. Ahrenholz
Attorney for Debtor

Lydia Meyer
Chapter 13 Trustee

Patrick S. Layng
Office of the U.S. Trustee, Region 11