UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| ROBERT SAM, | ) | CASE NO. 18-81910 |
| | ) | |
| Debtor(s) | ) | JUDGE: THOMAS M. LYNCH |

**RALPH HELM AND VERA HELM'S OBJECTION TO CHAPTER 13 PLAN OF REORGANIZATION FILED BY DEBTOR ON AUGUST 10, 2018**

NOW COME RALPH HELM and VERA HELM ("Helms") by and through their attorneys, WILLIAMSMCCARTHYLLP and THOMAS P. SANDQUIST, and for their Objection to Chapter 13 Plan of Reorganization filed by Debtor on August 10, 2018, state as follows:

1.      This Court has jurisdiction with respect to this matter pursuant to 28 U.S.C. §1334.  Further, this is a core proceeding pursuant to 228 U.S.C. §157(b)(2)(L).

2.      Debtor commenced this case by filing a Petition and Plan in the Bankruptcy Court for the Northern District of Iowa on August 10, 2018.  The case was subsequently transferred to the Northern District of Illinois Western Division.

3.      Debtor's Plan discloses that Debtor has monthly gross income of $1,500.00.

4.      Debtor's Statement of Financial Affairs further claims that Debtor will be paying $600.00 in monthly rent and will not be incurring *any* monthly expenses for food, clothing or laundry.

5.      Debtor is currently residing in property commonly known as 7 Colony Court, Galena, Illinois 61036 ("Premises") under the terms of a lease ("Lease") entered into with Ralph and Vera Helm, a copy of which is attached hereto as **Exhibit A**.

1

6. Debtor has resided in the Premises since February 1, 2018 and has failed and refused to make any payments either pre or post-petition to the Helms, except for $3,000.00 paid to the Court Clerk.

7. The Helms obtained a judgment for eviction against the Debtor on July 2, 2018, which provided that the Debtor was to vacate the Premises no later than August 11, 2018.

8. Debtor's Plan, at least so far as Debtor intends to keep occupying the Premises, is based upon inaccurate expense numbers. Specifically, without limitation, Debtor lists monthly rent in the amount of $600.00 when his monthly rent under the Lease is $5,000.00.

9. Debtor is unable to pay the rent due to the Helms and make any payments to anyone else for any other expense; in fact, Debtor's monthly shortfall to simply pay his rent is $3,500.00.

10. The timing of Debtor's bankruptcy filing in a wholly inappropriate district on the last day prior to being ordered to vacate the premises coupled with the Debtor's wholly unrealistic income and expense numbers relative to the monthly amounts due under the lease show that Debtor has not proposed this Plan in good faith, and his actions in filing the petition have not been in good faith in violation of both 11 U.S.C. §§1325(a)(3) and (a)(7).

11. Debtor's Plan when viewed in conjunction with his monthly income and expenses and his obligations due under the lease show that Debtor will not be able to make all the proposed payments under the Plan or to comply with the Plan in violation of 11 U.S.C. §1325(a)(6).

WHEREFORE, Helms move this Court to deny confirmation of Debtor's Plan dated August 10, 2018 and for such other and further relief as this Court deems just.

RALPH HELM & VERA HELM

By: WILLIAMSMcCARTHYLLP

By: _____
THOMAS P. SANDQUIST

Prepared by:
Thomas P. Sandquist
ARDC #06198232
WILLIAMSMcCARTHYLLP
120 West State Street, P.O. Box 219
Rockford, IL 61105
(815) 987 8900
tsandquist@wilmac.com

3

C1

Addendum #1 ID 3715718B-7F4F-4533-3E51-7518526473CC

## LEASE AGREEMENT

### Preamble

This lease agreement is made and entered into this 19 day of Jan 2018, at Huntley, Illinois, by and between Ralph Helm and Vera Helm, hereinafter called "Lessor", and RKS Trust by Robert Sam hereinafter called "Lessee."

### ARTICLE 1. DEMISE, DESCRIPTION, USE, TERM, AND RENT

Section 1.01. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, that certain property, hereinafter called the "leased premises," known as 7 Colony Ct., Galena, situated in Jo Daviess County, Illinois, which shall include all existing improvements to said premises to be used as a single family residence, for the term commencing, and terminating on April 1, 2019, for the initial monthly rental of $5,000.00 payable as specified in Article 2 hereof. In addition, Lessee agrees to abide by all rules and regulations of the Homeowners Association to which the premises, and all occupants, are subject.

### Delivery of Possession

Section 1.02. The premises shall be delivered to Lessee on the date of the execution hereof in its existing condition.

### ARTICLE 2. RENT

### Monthly Rent

Section 2.01. Lessee shall pay Lessor at such place as the Lessor shall designate from time to time in writing, the monthly sum of $5,000.00, payable without prior demand and without any setoff or deduction whatsoever, except as expressly provided herein. Rent payments shall be made in arrears on the 1st day of each calendar month commencing March 1, 2018 (for the rent due for February 2018) and shall continue thereafter through March 31, 2019. Lessor will credit the sum of $2,000.00 per month, commencing with the rent payment made March 1, 2018, shall be credited from the rentals paid during the term of the lease against the purchase price as set forth in the option contract made a part hereof as Exhibit 1 if the sale of the property is completed as described in the option contract. Occupancy of the premises shall be granted on February 1, 2018.

### Effect of Default in Rent and Other Payments

Section 2.02. If Lessee defaults in the payment of any installment of rent hereunder, such installment shall bear interest at the rate of eight percent (8%) per annum from the 5th day after it is due until actually paid, except real estate taxes which shall bear the interest rate charged for late payment. In like manner, all other obligations, benefits, and moneys which may become due to Lessor from Lessee under the terms hereof, or which are paid by Lessor because of Lessee's default hereunder, shall bear interest at the rate of eight percent (8%) per annum from the 5th day after due date until paid, or, in the case of sums paid by Lessor because of Lessee's default hereunder, from the date such payments are made by Lessor until the date Lessor is reimbursed by Lessee therefore

**EXHIBIT**

**A**

Authenti sign ID: 02 3C74B0-7FA1-4339-9E53-7538SC8429DC

### Intention of the Parties

Section 2.03. It is the purpose and intent of the parties hereto that this lease shall yield to Lessor the gross amount of the rental specified above.

## ARTICLE 3. TAXES AND ASSESSMENTS

### Payment by Lessor

Section 3.01. Lessor shall pay the general real estate tax bill and the Property Owners' Association fees levied on or assessed against the leased premises.

### Hold Harmless Clause

Section 3.02. Except for Lessor's negligent acts, Lessee agrees to and shall protect and hold harmless Lessor and the leased premises from liability for any and all utility bills incurred during Lessee's occupancy, together with any interest, penalties, or other sums thereby imposed, and from any sale or other proceeding to enforce payment thereof.

## ARTICLE 4. INSURANCE

### Lessee's Obligation

Section 4.01. Lessee agrees to and shall, prior to possession, secure from a good and responsible company or companies doing insurance business in the State of Illinois, and maintain during the entire term of this lease, the following coverage:

(a) Public liability insurance in the minimum amount of $1,000,000.00 per occurrence for loss from an accident resulting in bodily injury to or death of persons, and $500,000.00 for loss from an accident resulting in damage to or destruction of property. Such amounts shall be reviewed by the parties annually to determine their continuing reasonableness.

(b) Fire and extended coverage insurance on the personal property of Lessee in the premises.

### Proceeds

Section 4.02. Proceeds from any fire or casualty policy or policies in the name of Lessors, insuring the underlying premises, shall be payable to Lessor, who shall, use such proceeds to make repairs as provided below.

### Fire and Casualty Damage

Section 4.03. If the building or other improvements on the leased premises should be damaged or destroyed by fire, flood, or other casualty, Lessee shall give immediate written notice thereof to Lessor.

Authentisign ID: 32327490-7FA1-4533-3E53-7518905432CC

## Total Destruction

(a) If the building on the leased premises should be totally destroyed by fire, flood, or other casualty, or if it should be so damaged that rebuilding or repairs cannot reasonably be completed within 15 working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, this lease shall terminate and rent shall be abated for the unexpired portion of this lease, effective as of the date of said written notification. Total destruction shall be determined by the Jo Daviess County building department and the insurance carrier insuring the leased premises. Lessee shall be entitled to refund of $2,000.00 per month from rent paid prior to destruction set forth above.

## Partial Damage

(b) If the building or other improvements on the leased premises should be damaged by fire, flood, or other casualty, but not to such an extent that rebuilding or repairs cannot reasonably be completed within 15 working days from the date of written notification by Lessee to Lessor of the occurrence of the damage, this lease shall terminate. If the building and other improvements are to be rebuilt or repaired and are untenantable in whole or in part following such damage, the rent payable hereunder during the period in which they are untenantable shall be adjusted equitably or in the event that Lessee cannot occupy the premises, rent shall be abated. Lessee may at its option terminate this lease by written notification at such time to Lessor, whereupon all rights and obligations hereunder shall cease. Lessor agrees to consult with Lessee as to proposed contractors to be used for repair but final decision shall be Lessor's.

(c) See also Lessee's option to Purchase set out in paragraph 17 hereof.

## Subrogation

4.04 The parties hereby waive each from the other any and all right of recovery for any loss to the premises or contents thereof that is within the scope of any fire and extended coverage policy carried by each party. The parties shall look solely to their respective insurance carrier for reimbursement of covered losses.

## ARTICLE 5.   UTILITIES

## Lessee's Obligation

Section 5.01.   Lessee shall from and after taking possession of the premises and during the full term hereof pay all charges for telephone, internet, gas, electricity, sewage, and water used in or on the leased premises and for the removal of rubbish there from immediately on becoming due and shall hold Lessor harmless from any liability therefore. Lessee further agrees to pay all charges for repairs to water meters on the leased premises whether necessitated by ordinary wear and tear, temperature extremes, accident, or any other causes. Such payments shall be made immediately on becoming due.

AuthentiSign ID: 323E7180-7FA1-4534-3651-2518CED42105

C 4

ARTICLE 6.   WASTE AND NUISANCE

Section 6.01.   Lessee shall not commit, or suffer to be committed, any waste on the leased premises, nor shall she maintain, commit, or permit the maintenance or commission of any nuisance on the leased premises or use the leased premises for any unlawful purpose.

ARTICLE 7.   REPAIRS

Lessee's Duty to Repair and Maintain

Section 7.01.   Lessee agrees to keep the leased premises in good order and repair and make any improvements to conform the building itself to appropriate regulation as regards Lessee's use as defined in the purpose clause hereof consistent with the building code requirements of the Jo Davies County and the Galena Territories and requirements of any other governmental body having jurisdiction over the premises. Lessee further agrees to keep the leased premises clean, and to repair or replace all broken or damaged doors, windows, plumbing fixtures and pipes, floors, stairways, railings, or other portions of the leased premises, including damage caused by moisture from broken windows and plumbing fixtures which Lessee is required to repair.   Lessee shall keep the paved portion of the premises and appurtenances free of ice and snow and trash. Lessee shall permit Lessor to inspect the premises at anytime upon not less than eight hours prior notice.

ARTICLE 8.   ALTERATIONS, IMPROVEMENTS, AND FIXTURES

Section 8.01.   Except as otherwise provided above, Lessee shall not alter or improve the leased premises without the prior written consent of Lessor to do so. Lessee shall submit all plans and designs for remodeling to Lessor for its approval, and in the event that the plans and designs are disapproved by Lessor, such changes shall not be made until reasonable changes to the plans required by Lessor are made.

ARTICLE 9.   QUIET POSSESSION

Covenant of Quiet Possession

Section 9.01.   Lessor shall, on the commencement date of the term of this lease as hereinabove set forth, place Lessee in quiet possession of the leased premises and shall secure him in the quiet possession thereof against all persons claiming the same during the entire lease term and each extension thereof.

Covenant Regarding Encumbrances

Section 9.02.   (a) Lessor covenants that the leased premises are not subject to any lien, claim, or encumbrance, except as hereinafter set forth, and that it is not in default or arrears in the making of any payment or the performance of any obligation relating to the leased premises.
                        (b) The leased premises are subject to the following:
                              (1) Unpaid taxes for the calendar year 2017.
                              (2) All conditions of record as reflected in attached Chicago Title Insurance Policy and as such policy will be updated to date of closing.

Authcode.sign.ID  123871BD-7A1-4538-1653-7533B2B12-ICC

C5

### Subordination

Section 9.03.   This lease and any extensions of the term hereof shall be subordinate, at the option of Lessor, to any and all mortgages or assignments given by Lessor on the leased premises and to all refinancing liens upon the property.

ARTICLE 10.   SECURITY DEPOSIT

### Receipt of Deposit

Section 10.01.   Lessor shall not require a security deposit from Lessee.

ARTICLE 11.   TERMINATION OR EXTENSION

### Effect of Holding Over

Section 11.01.   In the event Lessee unlawfully holds over beyond the expiration of the term hereof, such holding over shall be deemed a month-to-month tenancy only, at the rental of 1.5 times the most recent monthly rent, payable on the 1st day of each month thereafter until the tenancy is terminated in a manner provided by law.

ARTICLE 12.   SURRENDER OF PREMISES

### Removal of Property

Section 12.01.   Lessee shall, without demand therefore and at his own cost and expense upon the expiration or earlier termination of the term hereof or of any extended term hereof remove all property belonging to him and all alterations, additions, or improvements, and fixtures which by the terms hereof she is permitted to remove; repair all damage to the leased premises caused by such removal; and restore the leased premises to the condition they were in prior to the installation of the property so removed. Any property not so removed shall be deemed to have been abandoned by Lessee and may be retained or disposed of by Lessor.

### Surrender

Section 12.02.   Lessee agrees to and shall, on expiration or earlier termination of the term hereof, promptly surrender and deliver the leased premises to Lessor without demand therefore in good condition.

ARTICLE 13.   CONDEMNATION

### All of Premises

Section 13.01.   If during the term of this lease or any extension or renewal thereof, all of the leased premises should be taken for any public or quasi-public use under any law, ordinance, or regulation or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this lease shall terminate and the rent shall be abated during the unexpired portion of this lease, effective as of the date of the taking of said premises by the condemning authority. In addition Lessee shall be entitled

C6

Authensign ID  923E7100 77A1-453J 9E5J-751B5C042JCC

to a refund from Lessor of $2,000.00 per month for rental payments made prior to termination of lease, except the credit for February 2018 shall be as set forth above.

### Partial Condemnation

Section 13.02.  If less than all of the leased premises shall be taken for any public or quasi-public use under any law, ordinance, or regulation, or by right of eminent domain, or should be sold to the condemning authority under threat of condemnation, this lease shall terminate.

### Allocation of Awards

Section 13.03.  Lessor and Lessee shall each be entitled to receive and retain such separate awards and portions of lump-sum awards as may be allocated to their respective interest in any condemnation proceedings.  The termination of this lease shall not affect the rights of the respective parties to such awards. If Lessee exercises its option to purchase hereunder, Lessee shall be entitled to any award otherwise allocated to Lessor.

ARTICLE 14.  DEFAULTS AND REMEDIES

### Default by Lessee

Section 14.01.  If Lessee shall allow the rent to be in arrears more than 5 days or shall remain in default under any other condition of this lease for a period of 5 days after written notice from Lessor, or should any person other than Lessee secure possession of the premises, or any part thereof, by reason of any receivership, bankruptcy proceedings, or other operation of law in any manner whatsoever, Lessor may at its option, without notice to Lessee, terminate this lease (or, in the alternative, Lessor may reenter and take possession of said premises and remove all persons and property there from, without being deemed guilty of any manner of  trespass, and relet the premises or any part thereof, for all or any  part of the remainder of said term, to a party satisfactory to Lessor,  and at such monthly rental as Lessor may with reasonable diligence be  able to secure).  Should Lessor be unable to relet after reasonable efforts to do so, or should such monthly rental be less than the rental Lessee was obligated to pay under this lease, or any renewal thereof, plus the expense of reletting, then Lessee shall pay the amount of such deficiency to Lessor.

### Cumulative Rights and Remedies

Section 14.02.  All rights and remedies of Lessor under this lease shall be cumulative, and none shall exclude any other right or remedy at law.  Such rights and remedies may be exercised and enforced concurrently and whenever and as often as occasion therefore arises.

### Default by Lessor

Section 14.03.  If Lessor defaults in the performance of any term, covenant, or condition required to be performed by it under this agreement, Lessee may elect either one of the following:

Case 18-81910   Doc 37   Filed 10/09/18   Entered 10/09/18 15:42:25   Desc Main
Document     Page 10 of 16

C7

Authenusign ID: 82JEF1BD-TFA1-4534-3653-1533SCB42JOC

(a) After not less than 5 days' notice to Lessor, Lessee may remedy such default by any necessary action, and in connection with such remedy may pay expenses and employ counsel; all (reasonable) sums expended or obligations incurred by Lessee in connection therewith shall be paid by Lessor to Lessee on demand, and on failure of such reimbursement, Lessee may, in addition to any other right or remedy that Lessee may have, deduct the costs and expenses thereof from rent subsequently becoming due hereunder; or

(b) Elect to terminate this agreement on giving at least 30 days' notice to Lessor of such intention, thereby terminating this agreement on the date designated in such notice, unless Lessor shall have cured such default prior to expiration of the 30-day period, and

ARTICLE 15.   INSPECTION BY LESSOR

Section 15.01.   Lessee shall permit Lessor and its agents to enter into and upon the leased premises at all reasonable times upon at least 8 hours prior notice for the purpose of inspecting the same or for the purpose of maintaining or making repairs or alterations to the building.

ARTICLE 16.   ASSIGNMENT AND SUBLEASE

Assignment and Subletting by Lessee

Section 16.01.   Lessee shall not assign or sublet all or any portion of the leased premises without the prior written consent of Lessor. No consent to assign shall contain a release of Lessee from the obligations incurred in this lease

Assignment by Lessor

Section 16.02.   Lessor is expressly given the right to assign any or all of its interest under the terms of this lease.

ARTICLE 17.   OPTION TO RENEW AND OPTION TO PURCHASE

Section 17.01.   Option to Renew. NOT APPLICABLE.

Section 17.02.   Option to Purchase. Lessee shall have the option to purchase the leased premises for a price of $444,000.00. Said option shall be exercised, at anytime hereafter, by advising Lessor in writing of its intent to exercise said option not later than 5:00 pm on January 31, 2019. Said notice shall be delivered to Lessor at the same address as is then presently receiving Rent payments. Notice shall be in the form of the delivery of an executed copy of the real estate contract attached hereto as Exhibit A. Said option may only be exercised if Lessee is not in default of the terms of this lease at both the time of exercise of the option and at the closing of the purchase.

ARTICLE 18.   MISCELLANEOUS

Notices and Addresses

Section 18.01.   All notices provided to be given under this agreement shall be given by certified mail, addressed to the proper party, at the following addresses:

Authentisign ID: 023C7180 7FA1 4533 0E33 7570 5C08 12 X0C

C8

Lessor:     12581 Golf View Drive,
            Huntley, IL 60142

Lessee:     7 Colony Ct, Galena, IL 61036

or at such other place as the parties shall designate from time to time in
writing by notice consistent with the terms hereof.

## Parties Bound

Section 18.02.   This agreement shall be binding upon and inure to the
benefit of the parties hereto and their respective heirs, executors,
administrators, legal representatives, successors, and assigns when permitted
by this agreement.

## Applicable Law

Section 18.03.   This agreement shall be construed under and in accordance
with the laws of the State of Illinois.

## Legal Construction

Section 18.04.   In case any one or more of the provisions contained in
this lease shall for any reason be held to be invalid, illegal, or
unenforceable in any respect, such invalidity, illegality, or unenforceability
shall not affect any other provision thereof and this lease shall be construed
as if such invalid, illegal, or unenforceable provision had never been
contained herein.

## Sole Agreement of the Parties

Section 18.05.   This lease constitutes the sole agreement of the parties
hereto and supersedes any prior understandings or written or oral agreements
between the parties respecting the subject matter within it.

## Amendment

Section 18.06.   No amendment, modification, or alteration of the terms
hereof shall be binding unless the same shall be in writing, dated subsequent
to the date hereof, and duly executed by the parties hereto.

## Rights and Remedies Cumulative

Section 18.07.   The rights and remedies provided by this lease are
cumulative, and the use of any one right or remedy by either party shall not
preclude or waive its right to use any or all other remedies. Said rights and
remedies are given in addition to any other rights the parties may have by law,
statute, ordinance, or otherwise.

## Waiver of Default

Section 18.08.   No waiver by the parties hereto of any default or breach
of any term, condition, or covenant of this lease shall be deemed to be a
waiver of any other breach of the same or any other term, condition, or
covenant contained herein

*C 9*

Authentisign ID: 823C1480-77A1-4531-3E51-7730 5C94290C

## Attorney's Fees

Section 18.09.   In the event Lessor or Lessee breaches any of the terms of this agreement and the party not in default employs attorneys to protect or enforce its rights hereunder and a court order is entered finding such default, then the defaulting party agrees to pay the other party reasonable attorney's fees so incurred by such other party.

## Time of Essence

Section 18.10.   Time is of the essence of this agreement.

## Exculpation of Lessor

Section 18.11.   If Lessor shall convey title to the demised premises pursuant to a sale or exchange of property, the Lessor shall not be liable to Lessee or any immediate or remote assignee or successor of Lessee as to any act or omission from and after such conveyance.

## Recordation of Memo of Lease

Section 18.12. Lessor agrees to execute upon Lessee's request, a memorandum of this lease for the purpose of recordation with the Jo Davies County Recorder. The cost of recording shall be borne by Lessee.

IN WITNESS WHEREOF, the undersigned Lessor and Lessee hereto execute this agreement as of the day and year first above written.

LESSEE                          LESSORS
Authentisign

*Robert Sam*
_____                _____
1/10/2018 12:56:51 PM CST       Ralph Helm

                                _____
                                Vera Helm

*C-10*

Authorize ID: 823574BC-7FA1-4534-3E53-75JB5CB127CC

## Guarantee

FOR VALUE RECEIVED, the undersigned, hereby guarantees absolutely and unconditionally prompt payment when due, whether at maturity, by acceleration or otherwise, of the within Lease; and agrees to pay all costs and expenses, including attorney's fees, incurred by virtue of said lease terms and in the enforcement of this Guarantee. No renewal or extension of said lease, no release of any person, primarily or secondarily liable thereon, no delay in the enforcement of any obligation of the lease and no delay or omission in exercising any right or power under said Lease shall affect the liability of the undersigned hereunder. The undersigned expressly waives presentment, protest, demand, notice of dishonor or default, notice or acceptance of this Guarantee and notice of any kind with respect to said Lease or the performance of the obligations under said Lease. The undersigned consents and agrees to be bound by all of the terms and provisions of said Lease.

Address:                                        Signature:

7 Colony Ct
Galena Illinois 61036           *Robert Sam*

Authentical
1/12/2018 12:58:53 PM CST

*V*

Authentisign iD: 323E7493-77A1-4533-9E51-7538SCB129CC

# CONTRACT FOR THE SALE OF SINGLE FAMILY RESIDENTIAL REAL ESTATE

1.  **Parties.** Purchaser, _____KKS Trust by Robert San_____, agree(s) to purchase, and Seller Ralph Helm and Vera Helm, agree to sell and cause to be conveyed by warranty deed to Purchaser, or Purchaser's written nominee, the real estate hereinafter described together with all improvements thereon and appurtenances thereto, collectively the "Premises" at the price and on the terms set forth below.

2.  **Real Estate.** The Premises to be conveyed by Seller to Purchaser is that which is legally described as Lot 4 in Eagle Ridge Unit 17 of Stanings the Galena Territory, and otherwise that which is set forth on Seller's existing title evidence, commonly known as 7 Colony Ct, Galena, IL 60136

3.  **Fixtures and Personal Property.** (Check applicable items)  Seller agrees to transfer to Purchaser by a Warranty Bill of Sale, in their "as is" condition (unless otherwise provided herein) all heating, electrical, plumbing and other attached fixtures as installed and all other items of tangible personalty in the home on the date of the lease to which this contract is an attachment.

4.  **Purchase Price.** The purchase price of $444,000.00 shall be paid to Seller as follows: Purchaser shall pay at the time of delivery of this contract the sum of $25,000 00 as the initial earnest money shall be applied on the purchase price; the earnest money shall be forfeited if Purchaser's obligations to Seller hereunder are breached. The initial earnest money shall be deposited with Galena-Real Estate Company Purchaser shall satisfy the balance of the purchase price, plus or minus prorations in cash or by certified or cashier's check at the time of closing.

5.  **Financing.** Deliberately left blank there is no financing contingency.

6.  **Closing.** Closing (or escrow payout if applicable) shall be on a date agreed to by the parties not later than sixty days after the date of delivery of this contract to Sellers, provided title has been shown good or is accepted by Purchaser.  Unless subsequently mutually agreed otherwise, the closing shall take place at the office of the Title Escrow Agent, if any, or if none, at the office of Seller's attorney.

7.  **Possession.**  Purchaser presently occupies the premises as Lessee.

8.  **Lead-Based Paint.**  The Premises were not constructed before 1978.

9.  **Commission.** Realtor's commission due and owing for this transaction Seller shall be paid at closing.

10. **Acceptance.** The offer contained herein shall be deemed accepted by Seller upon delivery to Seller provided it is consistent with the terms of the lease agreement executed between the parties hereto on __Jan 13th_____2018.

11. **Additional Provisions.**  This Contract includes those additional provisions contained hereafter.

12. **Contract Form.**  The CONTRACT FORM IS selected by the parties four use in this transaction.  REPRODUCTIONS OR FACSIMILE TRANSMISSIONS OF THE EXECUTED ORIGINAL OF THIS CONTRACT (WITH REPRODUCED SIGNATURES) SHALL BE DEEMED TO BE ORIGINAL COUNTERPARTS OF THIS CONTRACT.

13. **Legal and Binding.**  THIS FORM WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED AND, IF NOT UNDERSTOOD, THE PARTIES MAY WISH TO CONSULT AN ATTORNEY BEFORE SIGNING.  The parties are cautioned that neither the brokers nor the attorneys involved in this transaction are to be looked to for advice as to the condition of the Premises.

14. **Condition of Title.** Seller shall convey or cause to be conveyed to Purchaser at closing good and merchantable title to the Premises free of all homestead rights of Seller and his spouse and subject only to the following permitted exceptions, if any, currently affecting the Premises:  (a) general real estate taxes not yet due or payable at the time of closing; (b) special assessments and taxes confirmed after the of the lease agreement between the parties date for improvements not yet completed; (c) building set-back lines; (d) recorded use or occupancy restrictions; (e) zoning laws and ordinances; (f) covenants, conditions and restrictions of record provided that same do not contain a reverter or right of re-entry; and (g) perimeter public utility easements, drainage ditches, feeders, laterals, and drain tiles, provided that none of same underlie any existing improvements on the Premises.

15. **Title Insurance.** At least 30 days prior to the proposed closing date, Seller shall furnish or cause to be furnished to Purchaser, at Seller's expense, a commitment for an American Land Title Association owner's title insurance policy, issued by a title insurance company licensed to do business in the State of Illinois bearing date on or after the date hereof, naming Purchaser as the proposed insured in the amount of the Purchase Price, showing title to the Premises in the intended grantor, subject only to: (a) the permitted exceptions set forth in Paragraph 14 above; (b) title exceptions pertaining to liens or encumbrances of a definite or ascertainable amount, which may be removed by the payment of a sum of money at the time of closing (which sum shall be deducted from the Purchase Price and paid to obtain the release of such items); (c) acts done or suffered by or judgments against Purchaser, or those claiming by, through or under Purchaser; and (d) not raising any exception as to lack of public access. Such title commitment shall be conclusive evidence of the condition of title to

*D1*

Authentisign ID: 923671BD-77A1-4533-1E53-7530508442CC

the Premises except for matters not covered or insured against thereby. If Seller permits Purchaser or Purchaser's mortgage lender to procure the title insurance, Seller shall not be chargeable with any delay in the receipt of said commitment.

15.  **Plat of Survey**. At least 14 days prior to scheduled closing, Seller shall, at their expense, provide to Purchaser a plat of survey of the Premises prepared by an Illinois registered land surveyor, dated not more than six months prior to the date of closing hereunder (or such more recent date as Purchaser's mortgage lender may require), showing: (a) all corners of the Premises to be monumented with iron pipes or other monumentation sufficient to define the corners; (b) the location of all improvements and fencing on the Premises and the distances from same to the various lot lines; (c) all set-back lines and easements of record; and (d) any encroachments by improvements located on adjacent property onto the Premises.

17.  **Title Defects**. If the title insurance commitment or plat of survey discloses unpermitted exceptions or other title defects, Seller shall have 30 days from the date of delivery thereof to have the exceptions or defects removed or otherwise remedied or to have the title insurer commit to insure Purchaser against loss or damage that may be occasioned by such exceptions or defects, and, in such event, the time of closing shall be 35 days after delivery of the title commitment and survey or the time specified in Paragraph 6 above (whichever is later). If Seller fails to have the unpermitted title exceptions or title defects removed, or in the alternative to obtain the commitment of the title insurer to insure over such exceptions or defects within the specified time, Purchaser may terminate this Contract or may elect, upon notice to Seller within 10 days after the expiration of the 30-day period, to take title as it then is with the right to deduct from the Purchase Price liens or encumbrances of a definite or ascertainable amount. If Purchaser does not so elect, this Contract shall become null and void without further action of the parties and all earnest money shall be refunded to Purchaser.

18.  **Additional Performance by Seller**. Seller, at his own expense, shall also furnish to Purchaser at closing the following:
(A) recordable general warranty deed (or other appropriate deed if title is derived from a fiduciary) subject only to the title exceptions permitted herein, and including a release of all homestead rights; (B) an affidavit of title covering the date of closing together with such other documents as are reasonably required for the issuance of an ALTA Mortgage Title Insurance Policy;
C.) a bill of sale with warranty of title for the personal property, if any, itemized in Paragraph 3 above;
(D) such information as Purchaser may reasonably require in order to comply with Section 1445 of the Internal Revenue Code and the Treasury Regulations promulgated there under; Seller shall pay the reasonable reporting fee, if any, charged by the lender or the title insurer.

19.  **Joint Undertakings**. Purchaser and Seller shall tender and provide to each other at closing all such information, shall execute and deliver all such documents, and shall otherwise tender to the other all such performance as may be required to cause each party to comply with the provisions of (a) the RESPA, (b) Section 6045(e) of the Internal Revenue Code and, (c) any regulations promulgated there under and any and all other applicable laws.

20.  **Prorations**. General real estate taxes shall be prorated on the basis of the last known tax bill on the Premises. Seller shall pay all State of Illinois and County real estate transfer taxes. Any applicable municipal transfer tax shall be paid by the party described in said ordinance. All utilities, service contracts, homeowner's association assessments and reserve deposits, premiums of hazard insurance policies, shall be prorated as of the date of closing. All prorations shall be final as of the date of closing.

21.  **Escrow Closing**. This sale shall be closed through an escrow with the title insurer ("escrowee") in accordance with the general provisions of the usual form of deed and money escrow agreement then in use by the escrowee, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. The cost of the escrow shall be paid consistent with such Title Insurer policy.

22.  **Disposition of Earnest Money By Escrowee**. If Purchaser defaults, Seller may seek such damages or pursue such other remedies as may be available to Seller under Illinois law. If Seller defaults, the earnest money shall be refunded to Purchaser upon the joint direction of the parties but such refunding shall not release Seller from his obligations under this Contract nor foreclose the right of Purchaser to pursue other remedies (including, without limitation, specific performance). Except as otherwise set forth herein, in the event of default, the earnest money shall continue to be held by Seller's Realtor, Galena Real Estate Co..

23.  **Condition of Premises and Inspection**. Purchaser is currently occupying the premises and is responsible for the condition of the premises.

24.  **Miscellaneous**.
(A) The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.
(B) Time is of the essence of this Contract.
(C) All notices, elections and waivers required or otherwise given hereunder shall be in writing and shall be served, unless otherwise provided, on the parties or their respective



AuthenSign ID: 32357430 7FA14533 9E53 7538 5C8 423CC

attorneys, if any, personally or by certified mail with postage prepaid and deposited into the United States mail (return receipt requested) or by facsimile transmission. If mailed as aforesaid, notices, elections and waivers shall be deemed given on the date of such mailing (except as elsewhere provided herein).

(D) The singular shall include the plural and the masculine shall include both feminine and neuter, whenever appropriate.

(F) Purchaser will obtain flood insurance if required by Purchaser's lender.

(G) Judicial Proceedings resulting from this Contract or the alleged breach or enforcement thereof, the party prevailing in said proceeding shall be entitled to recover his/their costs and expenses (including, without limitation, reasonable attorneys' fees and costs incurred in any action arising under Paragraph 22 above) from the non-prevailing party.

Date of Offer: 1/19/2019 _____

Purchaser: *Robert Sam*
1/19/2019 12:58:16 PM CST

Seller: _____

Address: _____

_____

$25,000.00 escrow money for the purchase will be delivered no later than February 1ˢᵗ, 2019  [RS]

Page 1 of 3